**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 14-cv-2473-WJM

ELLA M. FLAKES,

     Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

     Defendant.

---

## ORDER VACATING DECISION OF ADMINISTRATIVE LAW JUDGE

---

     This is a Social Security benefits appeal brought under 42 U.S.C. § 405(g).

Plaintiff Ella M. Flakes ("Flakes") challenges the final decision of Defendant, the

Commissioner of Social Security ("Commissioner"), denying her application for

supplemental security income benefits and disability insurance benefits.  The denial

was affirmed by an administrative law judge ("ALJ"), who ruled that Flakes was not

disabled within the meaning of the Social Security Act.  This appeal followed.

     For the reasons set forth below, the ALJ's decision denying Flakes's application

for supplemental security income benefits and disability benefits is VACATED and this

case is REMANDED for further proceedings consistent with this order.

### I.  BACKGROUND

     Flakes was born in September 1982 and was 26 years old on the alleged

disability onset date of June 6, 2009.  (Administrative Record ("R.") (ECF No. 11) at

105.)  Flakes graduated from high school and has previously worked as a dining room

attendant, fast food cook, and sales clerk.  (R. at 39–40.)

Flakes applied for disability insurance benefits and supplemental security income on May 29, 2012, with a protective filing date of May 7, 2012.  (R. at 11, 105, 110.) Flakes claimed that she is disabled due to the following conditions: back and neck pain, anxiety, blood clots in her legs, asthma, knee pain, depressive disorder, obesity, and gastroesophageal reflux disease (GERD).  (R. at 13, 136.)  Her application was denied on September 7, 2012.  (R. at 63, 66.)  Flakes requested and received a hearing in front of an ALJ, E. William Shaffer.  (R. at 69.)  On June 4, 2013, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[1]

At step one, the ALJ found that Flakes had not engaged in substantial gainful activity since June 6, 2009, the alleged disability onset date.  (R. at 13.)

At step two, the ALJ found that Flakes suffered from "the following severe impairments: asthma, depressive disorder, anxiety disorder, obesity, and [GERD]."  (*Id.*) The ALJ did not find that any other claimed condition was a severe impairment.  (R. at 13–14.)

At step three, the ALJ found that Flakes's impairments, while severe, did not meet or medically equal any of the impairments listed in the Social Security regulations.

---

[1] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.)  The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

(R. at 14.)

Before proceeding to step four, the ALJ assessed Flakes's residual functional capacity ("RFC").  The ALJ concluded that Flakes has the RFC "to perform a range of light work . . . .  [Flakes] is further limited to avoiding concentrated exposure to fumes, odors, dusts, and gases; avoid[ing] concentrated exposure to unprotected heights and unprotected major manufacturing machinery; and limited to unskilled work."  (R. at 15.)  Then, at step four, the ALJ concluded that Flakes is unable to perform any of her past relevant work.  (R. at 17.)

At step five, the ALJ found that other jobs exist in the national economy that Flakes can perform, including fast food worker, survey worker, and marker (*i.e.*, one who marks merchandise, either to identify the object itself or to specify its price).  (R. at 18–19, 43.)  Accordingly, the ALJ found that Flakes was not entitled to Social Security benefits.  (R. at 19.)

Flakes appealed to the Social Security Appeals Council (R. at 7), which denied review (R. at 1).  Flakes then filed this action seeking review of the ALJ's June 4, 2013 decision.  (ECF No. 1.)

## II.  LEGAL STANDARD

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id*.  "It requires more than a scintilla, but less than a

preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Evidence is not

substantial if it is overwhelmed by other evidence in the record.  *Grogan v. Barnhart*,

399 F.3d 1257, 1261–62 (10th Cir. 2005).  In reviewing the Commissioner's decision,

the Court may neither reweigh the evidence nor substitute its judgment for that of the

agency.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  "On the other hand, if

the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a

lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir.

1993).

### III.  ANALYSIS

Flakes's appeal focuses almost exclusively on alleged errors in the ALJ's RFC

formulation and the effect of those errors at later stages of the five-step process.  The

Court finds that two errors require remand.

### A.    RFC Assessment: Treatment of Dr. Rodriguez's Opinion

The ALJ's RFC formulation was not, on this record, supported by substantial

evidence because it was inherently contradictory.

The RFC determination largely turned on Flakes's mental capabilities.  (*See*

R. at 16–17.)  Flakes reported severe depression, anxiety, irritability, and difficulty

socializing.  (R. at 34–39.)  The ALJ, however, found this inconsistent with mental

health treatment records supposedly showing that Flakes's difficulties were improving

with treatment.  (R. at 17.)

On the other hand, Flakes's report was supported by an examining psychologist,

Carlos Rodriguez, Ph.D.  Through a detailed clinical interview that post-dated the

mental health treatment records (*compare* R. at 312 *with* R. at 242–60), Dr. Rodriguez

found "cognitive deficits in environmental information, attention, calculation,

concentration and long-term memory," as well as "deficits in abstraction ability and

basic social judgment." (R. at 315.) "She also presents with evidence of . . . Major

Depression . . . ." (*Id.*) Dr. Rodriguez stated that his "prognosis for change" was

"guarded," and that there was no discrepancy between his conclusions and Flakes's

mental health treatment records. (R. at 316.) Dr. Rodriguez gave Flakes a GAF score[2]

of 45. (*Id.*)

Dr. Rodriguez also filled out a Social Security form titled "Residual Functional

Capacity Evaluation (Mental)." (R. at 317.) There, Dr. Rodriguez concluded that Flakes

had moderate limitations in the ability to remember and carry out very short and simple

instructions, but marked to extreme limitations in the ability to maintain attention and

concentration for extended periods. (*Id.*) Dr. Rodriguez also found moderate to

marked limitations in Flakes's ability to work in coordination with or in proximity to others

without being distracted by them, and marked limitations in the ability to complete a

---

[2] As the Tenth Circuit has explained:

> The GAF is a subjective determination based on a scale of 100 to
> 1 of "the clinician's judgment of the individual's overall level of
> functioning." American Psychiatric Association, Diagnostic and
> Statistical Manual of Mental Disorders (Text Revision 4th ed.2000)
> at 32. A GAF score of 51–60 indicates "moderate symptoms,"
> such as a flat affect, or "moderate difficulty in social or
> occupational functioning." *Id.* at 34. A GAF score of 41–50
> indicates "[s]erious symptoms . . . [or] serious impairment in
> social, occupational, or school functioning," such as inability to
> keep a job. *Id.*

*Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (alterations in original).

normal workday and workweek without interruptions from psychologically-based symptoms.  (*Id.*)  In addition, Dr. Rodriguez found marked to extreme limitations in the ability to accept instructions and respond appropriately to criticism from supervisors, and marked limitations in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (R. at 318.)

The ALJ concluded that Dr. Rodriguez's report deserved "little weight" because it was in "conflict with the [mental health treatment records]."  (R. at 17.)  However, earlier in his analysis, the ALJ had already accepted Dr. Rodriguez's conclusions regarding concentration, persistence, and pace.  (R. at 15 (citing Exhibit 11F/4, *i.e.*, R. at 315).)  Thus, the ALJ had accepted some of Dr. Rodriguez's conclusions but later found that the most important parts of his analysis were contradicted by other evidence in the record.  The ALJ's decision does not explain how both could be true.  If Dr. Rodriguez's analysis is not credible, then it would seem that the ALJ should not have accepted his conclusions about concentration, persistence, and pace; and if his conclusions about concentration, persistence, and pace are acceptable, then there appears to be no basis for later declaring the bulk of his report to be not credible.  *See Chapo v. Astrue*, 682 F.3d 1285, 1291–92 (10th Cir. 2012) ("The ALJ accepted, at least to a limited extent, the restriction recognized by Dr. Vega with regard to Ms. Chapo's difficulty in dealing with the public.  But the ALJ fully discounted the bulk of Dr. Vega's mental RFC limitations with no explanation at all as to why one part of his opinion was creditable and the rest was not.  That is error under this circuit's case law.").

There may be an explanation for accepting some of Dr. Rodriguez's conclusions while rejecting most of his analysis.  However, no such explanation appears in the

6

ALJ's opinion, and this Court may not infer one.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The ALJ's decision should have been evaluated based solely on the reasons stated in the decision.").  Accordingly, the Court finds that the ALJ's RFC assessment lacked substantial evidence and must be vacated for reconsideration.

**B.    Step Five: Accounting for Mental Impairments**

The ALJ's erroneous formulation of the RFC obviously affected the hypotheticals he propounded to the vocational expert (VE) when determining whether jobs exist for an individual such as Flakes.  However, even if that error had not occurred, the Court would still find error at Step Five.  Specifically, the ALJ's hypotheticals to the VE did not properly account for even the moderate limitations in concentration, persistence, and pace that the ALJ was willing to accept.  Rather, the ALJ asked the VE to assume environmental limitations (such as avoiding exposure to fumes, working around machinery, etc.) but said nothing about mental limitations.  (R. at 40–41.)  The ALJ *did* ask the VE to assume "unskilled" work, but the Tenth Circuit has made clear that "unskilled" work is not synonymous with work that may be performed by someone with mental limitations:

> Whenever a claimant's residual functional capacity is diminished by both exertional and nonexertional impairments, the Secretary must produce expert vocational testimony or other similar evidence to establish the existence of jobs in the national economy.  A severe mental impairment is such a nonexertional impairment.  Yet the administrative law judge did not present to the vocational expert any difficulties manifested by the claimant's mental impairment.  Nor did the administrative law judge's questions relating to the claimant's ability to transfer skills include the possibility of problems arising from his existing mental

7

> impairment—comparison of mental demands required for a job does not effectively aid evaluation of a claimant's depressive disorder absent evidence that the disorder is caused or exacerbated by increased mental demands. Finally, the vocational expert was not even apprised of the claimant's depression to determine whether his ailment would affect his performance in the two jobs proffered by the vocational expert regardless of whether the claimant would suffer transitional problems. "[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision."

*Hargis v. Sullivan*, 945 F.2d 1482, 1491–92 (10th Cir. 1991) (citations omitted); *see also Chapo*, 682 F.3d at 1290 & n.3 (10th Cir. 2012) ("While the jobs cited by the VE happen to be unskilled, that just accounted for issues of skill transfer, not impairment of mental functions . . . ."). The Commissioner does not respond to this argument except to declare that it "has no merit" and move on. (ECF No. 15 at 14.)

Accordingly, the ALJ did not have substantial evidence from which to conclude that sufficient jobs exist for an individual with Flakes's limitations. For this additional reason, the ALJ's decision must be vacated for reconsideration.

**C.    Additional Arguments**

Because the Court vacates and remands for the reasons stated above, the Court need not address the other arguments raised by Flakes. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006). The Court expresses no opinion as to Flakes's other arguments and neither party should take the Court's silence as tacit approval or disapproval of those arguments. The Court also does not intend by this opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties and the ALJ to fully consider the evidence and all issues raised anew on

8

remand.  *See Kepler v. Chater*, 68 F.3d 387, 391–92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case].  Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case." (internal quotation marks omitted)).

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is VACATED and this case is REMANDED to the Commissioner for rehearing.

Dated this 17th day of July, 2015.

BY THE COURT:

_____

William J. Martínez
United States District Judge